UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MAINZ BRADY GROUP, INC, <br><br>　　　　　　　Plaintiff, <br><br>　　v. <br><br>SHANE SHOWN, <br><br>　　　　　　　Defendant. | CASE NO. C17-670 MJP <br><br> ORDER ON MOTION TO DISMISS |

The Court, having received and reviewed:

1. Defendant's Motion to Dismiss (Dkt. No. 12);

2. Plaintiff's Opposition to Motion to Dismiss (Dkt. No. 18);

3. Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss (Dkt. No. 18);

all attached declarations and exhibits; and relevant portions of the record, rules as follows:

IT IS ORDERED that Defendant's motion is GRANTED IN PART and DENIED IN PART, and that any portions of the complaint subject to dismissal will be dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiff will be permitted an opportunity to amend its pleadings; any amendments must be filed within 14 days of the date of this order or the dismissal will become a dismissal with prejudice.

IT IS FURTHER ORDERED that Defendant's motion pursuant to FRCP 12(f) to strike a portion of Plaintiff's pleadings is DENIED.

**Background**

Defendant was hired as an account manager for Plaintiff Mainz Brady Group (an IT recruiting company; "MBG") on January 4, 2016. As a condition of his employment, he executed an Employee Contract and an Employee Proprietary Information Agreement, both of which contained provisions acknowledging the confidential and proprietary nature of MBG's trade secrets, procedures, records, client lists and internal operating forms and agreeing that those items were to remain the exclusive property of his employer. (Dkt. No. 1, Complaint, Exs. A and B.)

On January 23, 2017, Defendant tendered his resignation. On that same day, despite signing a form representing that he had returned all confidential information to MBG, he emailed a number of proprietary MBG business forms to his personal email account. (Id. at ¶ 3.11.)

In February of 2017, Defendant opened his own IT recruiting and staffing agency (NxT Level) and Plaintiff claims that he has used confidential and proprietary information of theirs in that competing enterprise. (Id. at ¶¶ 3.14, 3.15.) The complaint further alleges that Defendant has posted positions on NxT Level's website involving job orders that MBG opened for its clients and solicited business on behalf of NxT Level on social media while still representing that he worked for MBG. (Id. at ¶¶ 3.16, 3.17.)

Defendant does not deny emailing MBG's business forms to himself, but denies that they were confidential or proprietary. (Dkt. No. 15, Answer at ¶ 3.11.)

**Discussion/Analysis**

1. *Misappropriation of trade secrets (WA Uniform Trade Secrets Act, RCW 19.108.020, 19.108.030; "WUTSA")*

Under Washington law, a trade secret is defined as information possessing independent economic value which derives from "not being generally known" and which is the subject of "reasonable efforts to maintain its secrecy." RCW 19.108.010(4). A party asserting a trade secret bears the burden of proving that the secret exists. Boeing Co. v. Sierracin Corp., 108 Wn.2d 38, 49 (1987).

Defendant is correct: Plaintiff's complaint completely fails to adequately plead misappropriation of trade secrets. The only thing which Defendant is specifically alleged to have misappropriated is MBG's internal business forms and email templates, which Plaintiff does not even claim are trade secrets (they are identified only as "confidential and proprietary information" in the Complaint; *see* Complaint at ¶ 3.15).

Plaintiff attacks this assertion on the grounds that Defendant has actually converted his motion to dismiss into a summary judgment by basing his argument on factual allegations not contained in its complaint. Plaintiff is correct in pointing out that Defendant makes factual assertions that the things he took have no economic value, that the email templates and forms were regularly sent to prospective clients and that MBG made no attempt to protect this information (Dkt. No. 12, Motion at 12-13) – none of which is alleged in the complaint.

But the Court can (and will) set all that aside and still find that Plaintiff has failed to adequately plead a trade secrets claim. It is insufficient that Plaintiff simply alleges that Defendant misappropriated trade secrets – that term is a legal conclusion and cannot stand alone without supporting factual allegations. Plaintiff's complaint contains none.

2. *Tortious interference with a contractual relationship or business expectancy*

The elements of this claim are (1) the existence of a valid contractual relationship or business expectancy; (2) that Defendant had knowledge of; (3) an intentional interference inducing or causing a breach or termination of the relationship/expectancy; (4) motivated by an improper purpose or accomplished by improper means; with (5) resultant damages. Commodore v. Univ. Mech. Contractors, Inc., 120 Wn.2d 120, 137 (1992).

Defendant argues that, because the tortious interference cause of action is based on the same facts upon which the trade secrets claim is predicated, it is preempted by the trade secrets claim, which by statute "displaces conflicting tort, restitutionary, and other law of this state pertaining to civil liability for misappropriation of a trade secret." RCW 19.108.900(1). There is case law that acts which constitute trade secret misappropriation may not be employed to support other causes of action. Thola v. Henschel, 140 Wn.App. 70, 82 (2007).

Although the weight of authority favors Defendant's position, the Court will not order dismissal of the tortious interference claim on this basis. Plaintiff will be allowed to proceed on this as an alternate theory of liability. Whether or not MBG is ultimately able to establish that Defendant misappropriated trade secrets, the company has plausibly plead that he misappropriated confidential/proprietary information which he then used in

a competing business to the detriment of existing relationships or expectancies of Plaintiff. On that basis, the tortious interference claim is not subject to 12(b)(6) dismissal.

However, the Court agrees with Defendant that Plaintiff's conclusory allegations about "valid contractual relationships and/or business expectancies" and Defendant's "intentional interference" with those relationships and expectancies falls far short of the Iqbal/Twombly mark. Plaintiff argues that "MBG will establish through discovery precisely what business it has lost to Shown." (Response at 9.) This kind of prospective pleading is exactly what 12(b)(6) is designed to prevent – vague allegations which then permit a plaintiff to go on a discovery fishing expedition to see if it can make them stick are not in the spirit of the federal rules of civil procedure. The tortious interference claim will be dismissed without prejudice; Plaintiff will be permitted to amend to plead plausible allegations establishing that cause of action if it so chooses.

3. *Consumer Protection Act, RCW 19.86.*

Defendant argues that because the Consumer Protection Act ("CPA") claim alleges a deception, it must conform to the heightened pleading standard of FRCP 9(b), a standard which applies where a cause of action is "grounded in fraud" or "sound[s] in fraud." Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1103-04 (9th Cir. 2003). In fact, the Court does not find this claim "grounded in fraud' -- such a finding would require Plaintiff to allege and prove that it was ignorant of Defendant's deception and relied on the deception to its detriment (*see* Stiley v. Block, 130 Wn.2d 486, 505 (1996)), which (based on Plaintiff's allegations *in toto*) is clearly not the case. This finding is further

bolstered by the fact that Plaintiff did not plead a cause of action for fraud. There is case law that, where a plaintiff has not "alleged facts that constitute fraud and the gravamen of the complaint is not fraud," the heightened pleading standard of FRCP 9(b) does not apply. Vernon v. Qwest Communic'ns, Int'l, Inc., 643 F.Supp.2d, 1256, 1264 (W.D.Wa. 2009). That certainly is the case here.

However, Plaintiff has a more substantial problem with this claim. A CPA claim requires proof of an unfair or deceptive act occurring in trade or commerce *with a public interest impact*; i.e., that "the alleged act had the *capacity* to deceive a substantial portion of the public." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780-785 (1986)(emphasis in original). Plaintiff's complaint alleges that Defendant's conduct "has the capacity to deceive members of the public" (Complaint at ¶ 8.3), but that is not the same thing as a "substantial portion of the public" and it is not intuitively obvious to the Court that the market to which these parties are aiming their efforts is large enough to constitute "a substantial portion of the public." There is considerable doubt in the Court's mind whether this is the kind of activity or the kind of business which the CPA is intended to regulate. Nevertheless, Plaintiff will be permitted to amend and address this shortcoming.

4. *Accounting*

> The requisites for a cause of action for an accounting are (1) a fiduciary relation existed between the parties, or that the account is so complicated that it cannot be conveniently taken in an action at law; and (2) the plaintiff has demanded an accounting from the defendant and the defendant has refused to render it. *State v. Taylor*, 58 Wn.2d 252, 262, 362 P.2d 247 (1961) (quoting *Seattle Nat'l Bank v. Sch. Dist. No. 40*, 20 Wash. 368, 373-74, 55 P. 317 (1898)); *Corbin v. Madison*, 12 Wn. App. 318, 327, 529 P.2d 1145 (1974).

Cascade Falls, LLC v. Henning, 2008 Wash. App. LEXIS 796, *27-28.

Defendant argues that there was no fiduciary relationship between himself and Plaintiff, but he cites no legal authority for that conclusory statement and the Court considers that an account manager is in a fiduciary relationship with his employer. However, Defendant's argument that MBG never demanded an accounting from him goes completely unanswered by Plaintiff and, on that basis, the claim is inadequately plead.

5. *Breach of contract*

This cause of action requires proof of (1) a valid contract, (2) a breach, (3) damages and (4) causation. Defendant does not dispute that there was a valid contract nor does he argue there was no breach. He attacks this claim on the grounds that Plaintiff failed to adequately allege "actual damages" or causation.

It is not a persuasive position. Plaintiff attached to the Complaint a copy of the Proprietary Information Agreement executed by Defendant wherein Plaintiff acknowledged that "irreparable injury will result to MBG from any violation or continued violation of the terms of this agreement." (Complaint, Ex. B at ¶ 8.) That alone is enough to enable this claim to survive a motion to dismiss.

6. *Injunctive relief*

Defendant argues that Plaintiff has not alleged any circumstances which demonstrate the immediate threat of irreparable injury required for an injunction. Plaintiff points out that (1) the WUTSA expressly authorizes injunctive relief (RCW 19.108.020; Pac. Aerospace & Elecs., Inc. v. Taylor, 295 F.Supp.2d 1188, 1200 (E.D.WA. 2003)); and (2) the

Proprietary Information Agreement signed by Defendant not only acknowledged that any violation would constitute "irreparable injury" to MBG, but expressly agreed the MBG would be entitled to an injunction thereby. (Complaint, Ex. B at ¶ 8.) This portion of Defendant's motion will be denied.

7. *Unjust enrichment*

Defendant's sole argument for dismissal of this claim is that, since none of the other claims are properly plead, this claim cannot survive. Since Defendant has only achieved partial dismissal of Plaintiff's claims (and that dismissal is without prejudice), there is no reason at this stage to dismiss the unjust enrichment claim.

8. *Motion to strike portion of pleading*

Defendant seeks to strike the following from the complaint:

> Shown has posted or caused to be posted positions on the website of his competing IT staffing agency, NxT Level (www.nxtlevel.io) for MBG's clients involving job orders that MBG opened for those clients. Upon information and belief, Shown had knowledge of those job orders for MBG's clients solely through his employment with MBG.

Complaint at ¶ 3.16.

Defendant's authority for the request is FRCP 12(f) which permits the court to "strike from a pleading… any redundant, immaterial, impertinent, or scandalous matter." His argument is that (1) the practice described by this allegation is a common practice in the industry and therefore not improper – a conclusory statement for which he offers no evidence; and (2) the allegation "does not apply to *any* of the causes of action that the plaintiff purports to plead." (Motion at 29; emphasis in original.)

As Plaintiff points out, the allegation relates to its claims of trade secret misappropriation, breach of contract, tortious interference and unjust enrichment. The motion to strike will be denied.

**Conclusion**

Despite the above-cited problems with the way Plaintiff has plead its complaint, Defendant has not argued (and it does not appear on the face of the complaint) that it would be futile to allow MBG to amend. A district court "should grant leave to amend… unless it determines that a pleading could not be cured by the allegation of other facts." OSU Student All. V. Ray, 699 F.3d 1053, 1079 (9th Cir. 2012).

The Court will dismiss the WUTSA, CPA, tortious interference and accounting claims, but permit Plaintiff the opportunity to amend to cure the defects which have been noted in the order. Plaintiff will have 14 days from the date of this order to effect those amendments The FRCP 12(f) motion to strike will be denied.

The clerk is ordered to provide copies of this order to all counsel.

Dated: October 11, 2017.

Marsha J. Pechman
United States District Judge